**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LENWOOD GATLING | No. 3:20-CR-00196 (MPS) |

**FINDINGS FOLLOWING *FATICO* HEARING**

On October 19, 2020, a grand jury returned an indictment charging the Defendant Lenwood Gatling with two counts of possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), one count of possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c), and possession of firearms by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  On May 2, 2022, the Court held a change of plea hearing for Gatling.  During the hearing, the parties indicated that there may be unresolved factual issues, necessitating a *Fatico* hearing, and the plea agreement sets forth the parties' disparate positions on the issue of the drug quantity involved in the drug offense.  *See* ECF No. 144 at 5.

On May 16, 2022, the parties filed a joint statement, stating that Gatling contests the Government's drug quantity calculations in part—in particular, for the drugs included in the Drug Enforcement Administration ("DEA") Exhibits 4.01 and 6.01.  ECF No. 148.  Specifically, Gatling took issue with the method of extrapolation used to determine the net weight of the drugs in Exhibits 4.01 and 6.01.  *Id.*  For Exhibit 4.01, which consisted of 159 glassine bags, the DEA chemist estimated a net weight of 4.5 grams of heroin and fentanyl by extrapolating for the entire set based on the weights of 9 groups of 3 bags each.  *Id.* at 2.  For Exhibit 6.01, which consisted of an estimated 11,779 bags, the DEA chemist estimated a net weight of 0.42 kilograms of heroin and fentanyl by extrapolating for the set based on the weights of 9 bags in each of the two sub-groups, the first consisting of an estimated 2,002 bags and the second consisting of an estimated 9,777 bags.  *Id.*

1

The Court held a *Fatico* hearing on July 13, 2022. After hearing testimony from the Government's witnesses, Gatling notified the Court that he no longer contests the calculation of drug quantity for Exhibit 4.01. For the reasons below, I find that the Government has proved the quantity of drugs in Exhibit 6.01 by a preponderance of the evidence.

I.     **FINDINGS OF FACT**

At the *Fatico* hearing, the Government presented two witnesses: (1) Betty J. Bleivik, a Senior Forensic Chemist with the DEA, ECF No. 154-2, and (2) Hendri P. Chauca, a Forensic Chemist with the DEA, ECF No. 154-3. I found the testimony of both witnesses to be credible. Because, as stated above, Gatling no longer contests the Government's proposed quantity for Exhibit 4.01, I will recount only the testimony of Bleivik, who analyzed Exhibit 6.01, and the materials supporting Exhibit 6.01.

Bleivik received a "brown cardboard box" containing glassine bags. Ex. 1 at USAO_007658. Some of the glassine bags were stamped with different names, including "NASA," "Iron Man," "NBA," Monopoly," Adidas," "Kool-Aid," "Trix," "King Kong," "Bad Medicine," "Big Apple, "Take Out," Jungle Killer," and "Wake Up." *Id.* Other glassine bags were not stamped. *Id.* Bleivik testified that she examined the glassine bags and determined that there were two different sizes of glassine bags. *See also id.* at USAO_007658. Thus, she divided the glassine bags into two groups by size and kept the two sizes separate from each other. She later named the two groups, "Sub-Group A" and "Sub-Group B."[1] Further, she testified that that she "didn't notice any difference in the contents" of the glassine bags and that the "only variation, other than size," that she could see upon visual inspection was the different logos.

Bleivik testified that she calculated the number of individual bags by conducting a "unit count extrapolation." *Id.* at USAO_007658. To do so, she needed to determine the total weight of all the glassine bags with their contents and the average weight of a single glassine bag with its contents. She testified that she randomly selected 9 bags from Sub-Group A by using Lottery Method A, which is a selection method found in the DEA manual. She described that the process for Lottery Method A was to

---

[1] For convenience, I will refer to the groups by the Sub-Group names.

put the glassine bags in beakers and randomly select bags from the beakers. She used Lottery Method A as the random selection method throughout her analysis and testified that, when implementing Lottery Method A, she did not make the selections based on the color, appearance, quantity of the contents, or any other factor. Instead, she testified that she simply took bags out of the various beakers holding the glassine bags. She also testified that selecting 9 bags at random—regardless of the total number of bags—for this calculation was standard procedure for the DEA.[2] After making her random selection, she weighed each of the 9 Sub-Group A bags, resulting in the following weights:

| Unit | Gross (grams) |
|---|---|
| 1 | 0.3555 |
| 2 | 0.3365 |
| 3 | 0.3657 |
| 4 | 0.3459 |
| 5 | 0.3367 |
| 6 | 0.3594 |
| 7 | 0.3907 |
| 8 | 0.3557 |
| 9 | 0.3533 |

*Id.* at USAO_007717. The average weight, based on the weights above, was 0.35549 grams. *Id.* Bleivik weighed all the Sub-Group A glassine bags with their contents and obtained a net weight of 711.73 grams. *Id.* She testified that to obtain the number of bags in Sub-Group A, she divided the net weight of Sub-Group A by the average weight of the bags in Sub-Group A. The estimated number of bags for Sub-Group A was 2,002.116.[3] *Id.* Bleivik then repeated the procedure for the other size of glassine bags ("Sub-Group B"). She randomly selected 9 glassine bags from Sub-Group B, using Lottery Method A, and weighed each bag, resulting in the following weights:

---

[2] She also testified that all of the calculations in her report were completed by a computer program. Further, if the standard deviation for the recorded weights of the 9 bags was too large, then the program would ask her to redo the analysis by randomly selecting another 9 bags.

[3] My calculation, based on the numbers in Bleivik's report, resulted in the following: 711.73 / 0.35549 = 2002.1098 bags. Although it is not clear, the slight difference in results may be based on the number of decimal places used in the calculations.

| Unit | Gross (grams) |
|------|---------------|
| 1    | 0.2743        |
| 2    | 0.2905        |
| 3    | 0.2677        |
| 4    | 0.2843        |
| 5    | 0.2680        |
| 6    | 0.2848        |
| 7    | 0.2995        |
| 8    | 0.2783        |
| 9    | 0.2741        |

*Id.* at USAO_007718. The average weight, based on the weights above, was 0.28017 grams. *Id.* Bleivik weighed all Sub-Group B glassine bags with their contents and obtained a net weight of 2,747.51 grams. *Id.* She testified that to obtain the number of bags in Sub-Group B, she divided the net weight of Sub-Group B by the average weight of the bags in Sub-Group B. Based on this calculation, the estimated number of bags for Sub-Group B was 9,806.6984.[4] *Id.* The total number of glassine bags in Exhibit 6.01 and Exhibit 6.02 was 11,808.814.[5] *Id.* at USAO_007658.

Bleivik randomly selected 29 bags using Lottery Method A and tested the contents of the bags. She used 29 bags because DEA procedure calls for a randomly selected set of 29 bags for screening or precomposite testing. After testing, she determined that bags with the "Take Out," "Jungle Killer," and "Wake Up" stamps contained fentanyl. Of all of the glassine bags, she identified 29 units with the "Take Out," "Jungle Killer," and "Wake Up" stamps and grouped those units into Exhibit 6.02. *Id.* at USAO_007658. The rest of the units tested, which were grouped into Exhibit 6.01, contained heroin and fentanyl. *Id.* It appears that Exhibit 6.02 was comprised of only Sub-Group B bags.[6] After removing the 29 bags from Sub-Group B to create Exhibit 6.02, the total number of bags in Sub-Group B in Exhibit

---

[4] My calculation, based on the numbers in Bleivik's report, resulted in the following: 2747.51 / 0.28017 = 9806.5817 bags. The small difference may be attributed to the decimal places used in Bleivik's calculation as compared to my calculation. *See supra* footnote 3.

[5] This is calculated by adding the number of bags for Sub-Group A and Sub-Group B: 2,002.116 + 9,806.6934 = 11,808.8094.

[6] When Exhibit 6.01 and Exhibit 6.02 were combined, Bleivik calculated 2,002 bags in Sub-Group A. The number of bags in Sub-Group A remained the same when Exhibit 6.02 bags were removed. Thus, I assume that the bags in Exhibit 6.02 were solely Sub-Group B bags.

6.01 was 9,777.[7] Thus, the total number of glassine bags in Exhibit 6.01 was 11,779 units.[8] *See id.* at USAO_007658.

After she removed the Exhibit 6.02 glassine bags, Bleivik sought to determine the net weight of the drugs in Exhibit 6.01 using the "container extrapolation" method.[9] *See also id.* at USAO_007658; *id.* at USAO_0077659. Bleivik kept separate the two sub-groups of glassine bags in Exhibit 6.01. USAO_0077659. As described above, Bleivik had calculated the number of glassine bags in Sub-Group A (2,002) and Sub-Group B (9,777). To obtain the net weight of the drugs in Exhibit 6.01, she testified that she randomly selected "9 groups of 1 unit each" from each Sub-Group. *See* ECF No. 148 at 2; Ex. 1 at USAO_0077659. In other words, she randomly selected 9 bags from Sub-Group A and 9 bags from Sub-Group B. First, she weighed the 9 bags from Sub-Group A with their contents and the 9 bags from Sub-Group B with their contents. *Id.* at USAO_007658; *id.* at USA_007719. She testified that she emptied the contents of the randomly selected glassine bags and weighed each empty bag to obtain the average weight of an empty glassine bag.

|   | Sub-Group A (grams) | Sub-Group B (grams) |
|---|---|---|
| **1** | 0.2702 | 0.2481 |
| **2** | 0.2767 | 0.2598 |
| **3** | 0.2823 | 0.2455 |
| **4** | 0.2835 | 0.2455 |
| **5** | 0.2806 | 0.2497 |
| **6** | 0.2855 | 0.2564 |
| **7** | 0.2894 | 0.2573 |
| **8** | 0.2934 | 0.2546 |
| **9** | 0.2947 | 0.2460 |
| **Average Weight** | 0.28292 | 0.25143 |

---

[7] This is calculated by subtracting the bags in Exhibit 6.02 from the total number of bags in Sub-Group B: 9,806.6984 – 29 = 9,777.6984.

[8] This is calculated by subtracting Exhibit 6.02 bags from the total number of glassine bags. 11,808.814 – 29 = 11,779.814. *See* USAO_007658. This is also the sum of the the bags in Sub-Groups A and B. 2,002 + 9,777 = 11,779.

[9] Even though Exhibit 6.01 contained glassine bags with different logos, Bleivik testified that she did not differentiate amongst the logos to determine net weight because "[v]isually[,] [the glassine bags] all seemed [to be] the same size."

5

*Id.* at USAO_007719; *Id.* at USAO_007720; *see also id.* at USAO_007659. She testified that she calculated the total weight of the empty glassine bags in Sub-Group A and Sub-Group B by multiplying the number of bags in each Sub-Group by the average weight of an empty bag in each Sub-Group. Even though the binder introduced at the hearing as Exhibit 1 does not show these calculations, based on the numbers in the exhibit, I was able to calculate the weight of the empty glassine bags in Sub-Group A and Sub-Group B using the methodology that Bleivik described. Specifically, I calculated the net weight of the empty glassine bags in Sub-Group A to be 566.438659 grams,[10] and the net weight of the empty glassine bags in Sub-Group B to be 2,458.40671 grams.[11] Then, to obtain the net weight of the drugs, i.e., the contents, in the glassine bags, Bleivik testified that she subtracted the total weight of the empty glassine bags in each Sub-Group from the total weight of each Sub-Group (i.e., the weight of the bags plus their contents). Using this method of calculation, the numbers in the exhibits, and the numbers calculated above, I calculated the net weight of the drugs in Sub-Group A to be 145.291341 grams[12] and the net weight of drugs in Sub-Group B to be 280.97836 grams.[13] I calculated the total drug weight in Exhibit 6.01 to be 426.269701 grams or approximately 0.43 kilograms.[14] According to Bleivik's report, she obtained a net weight of 421.65601 grams or 0.42 kilograms.[15] *Id.* at USAO_007720; *see* ECF No.

---

[10] Net weight of the empty glassine bags in Sub-Group A is equal to the average weight of empty Sub-Group A bags multiplied by the number of bags in Sub-Group A.  0.28292 x 2,002.116 = 566.438659.

[11] This calculation uses numbers from Sub-Group B in Exhibit 6.01. Net weight of the empty glassine bags in Sub-Group B is equal to the average weight of empty Sub-Group B bags multiplied by the number of bags in Sub-Group B.  0.25143 x 9,777.6984 = 2,458.40671.

[12] Net weight of drugs in Sub-Group A is equal to the net weight of Sub-Group A minus the net weight of the empty glassine bags in Sub-Group A.  711.73 - 566.438659 = 145.291341 grams.

[13] Because the net weight calculation of Sub-Group B above included the Exhibit 6.02 bags, I must first subtract the weight of the Exhibit 6.02 bags. The weight of the Exhibit 6.02 bags is calculated by multiplying 29 bags by the average weight of the Sub-Group B bags.  29 x 0.28017 = 8.12493 grams. Then to calculate the net weight of Exhibit 6.01 Sub-Group B, I must subtract the calculated weight of the Exhibit 6.02 bags from the net weight of all Sub-Group B bags.  2,747.51 - 8.12493 = 2,739.38507 grams. Finally, to obtain the net weight of drugs in Sub-Group B, I must subtract the net weight of the empty glassine bags in Sub-Group B in Exhibit 6.01 from the net weight of Sub-Group B in Exhibit 6.01. 2,739.38507 - 2,458.40671 = 280.97836 grams.

[14] The total net weight for drugs in Exhibit 6.01 was calculated by adding the net weights of the drugs from both Sub-Groups.  145.291341 + 280.97836 = 426.269701 grams.

[15] My calculation, based on her numbers in the report, resulted in 426.269701 grams. Again, although it is not clear, the slight difference may be attributed to the number of decimal places used in the calculations. *See supra* footnotes 3, 4.

148 at 2. Bleivik's report also indicates that all 29 units tested from Exhibit 6.01 contained heroin and fentanyl. Ex. 1 at USAO_008035.

## II.     Conclusions of Law

Gatling argues that the extrapolation method used to calculate the net weight for drugs in Exhibit 6.01 was improper. Specifically, at the hearing, he argued that the numbers in Bleivik's analysis did not add up, although he did not point to any specific flaws in her analysis. He also argued that the sample size upon which the extrapolation was based was too small. He did not contest that the glassine bags contained heroin and fentanyl.

"At sentencing, the government bears the burden of proving drug quantity by a preponderance of the evidence." *United States v. Burks*, 784 Fed. App'x 821, 824 (2d Cir. 2019). "To sustain quantity-based enhancements for relevant conduct, the court must base its findings on 'specific evidence' that the offense involved the requisite quantity of items. This evidence can, however, be circumstantial. … This requirement has two parts: (a) there must be evidence regarding the quantity of illicit or fraudulent goods and (b) it has to be specific to the defendant." *United States v. Archer*, 671 F.3d 149, 162 (2d Cir. 2011) (citations omitted). "Case law uniformly requires specific evidence-*e.g.,* drug records, admissions or live testimony-to calculate drug quantities for sentencing purposes." *United States v. Shonubi (Shonubi I)*, 998 F.2d 84, 89 (2d Cir. 1993)

Based on the evidence and the testimony described above, I find that there is sufficient evidence regarding the quantity of drugs to support the Government's proposed quantity enhancement. There is no doubt that—and Gatling does not contest that—the Government's evidence in Exhibit 6.01 is "specific to the defendant." All of the glassine bags in Exhibit 6.01 were seized from Gatling and/or were involved in controlled buys in which he participated. The issue here is whether the DEA's extrapolation method was sound.

The Second Circuit has approved an extrapolation method based on a chemist's testing four randomly selected heroin balloons to estimate the quantity of heroin in the 103 balloons found inside a defendant's body. *United States v. Shonubi (Shonubi II)*, 103 F.3d 1085, 1092 (2d Cir. 1997). As in

7

*Shonobi II*, Bleivik randomly selected the glassine bags to conduct her extrapolation calculations. First, she weighed all of the glassine bags with their contents. She testified that she noticed there were two sizes of glassine bags and, therefore, she divided the glassine bags by size for the analysis. Then she randomly selected 9 glassine bags from Sub-Group A and 9 bags from Sub-Group B to determine the average weight of each glassine bag in each Sub-Group and the number of bags in each Sub-Group. From this, Bleivik calculated the net weight of the glassine bags with their contents for each Sub-Group. Afterwards, she again randomly selected 9 glassine bags from Sub-Group A and 9 bags from Sub-Group B to determine the average weight of an empty glassine bag from each Sub-Group and the net weight of the empty glassine bags in each Sub-Group. From this, Bleivik determined the net weight of drugs in each Sub-Group by subtracting the net weight of the empty glassine bags from the net weight of the glassine bags with their contents for each Sub-Group. She then added the net weights of drugs for Sub-Group A and Sub-Group B together to obtain the net weight of drugs for Exhibit 6.01. She testified that for each selection, she used Lottery Method A, which required her to separate the glassine bags into beakers and select, at random, glassine bags from the beakers. She also testified that she did not make the selections based on the color, appearance, quantity of the contents, or any other factor. Further, she testified that it was DEA policy to select 9 glassine bags at random to conduct this kind of analysis.

Bleivik's analysis rests on the assumption that the glassine bags randomly selected from Sub-Group A and Sub-Group B (of Exhibit 6.01 only) were representative of their respective Sub-Group. Specifically, this assumption rests upon the following subsidiary assumptions:

- That each glassine bag contains heroin and fentanyl;
- That the average weight of the 9 glassine bags with their contents from Sub-Group A was the same average weight of the glassine bags with their contents for all Sub-Group A glassine bags;
- That the average weight of the 9 glassine bags with their contents from Sub-Group B was the same average weight of the glassine bags with their contents for all Sub-Group B glassine bags;
- That the average weight of the 9 empty glassine bags from Sub-Group A was the same average weight of the empty glassine bags for all Sub-Group A glassine bags; and
- That the average weight of the 9 empty glassine bags with their contents from Sub-Group B was the same average weight of the empty glassine bags for all Sub-Group B glassine bags.

Because Bleivik's analysis was based on random samplings of the glassine bags, I can infer that the glassine bags selected for analysis were representative of their respective sub-groups of glassine bags, i.e., Sub-Group A and Sub-Group B.  *See Shonubi II*, 103 F.3d at 1092.  Further, Bleivik's analysis is bolstered by the fact that the weights of the 9 selected bags with their contents from Sub-Group A were close.[16]  The same can be said of the weights of the 9 selected bags with their contents from Sub-Group B.[17]  Thus, I can infer that the bags from their respective Sub-Group were relatively uniform.  Bleivik testified that, visually, the contents of the bags appeared to be similar.  In addition, Blevik's analysis is bolstered by her reliance on the weight of the empty glassine bags and her treating the two groups of glassine bags separately.  She observed that there were two sizes of glassine bags.  I can reasonably infer that these glassine bags were likely manufactured by the same supplier or were produced, even if by different manufacturers, in standard sizes.  I can also reasonably infer that the glassine bags came from the same source, i.e., defendant purchased a set of glassine bags in one size and another set of glassine bags in another set.  Since glassine bags in each sub-group here were likely manufactured in the same standard size, I can reasonably infer that each glassine bag in Sub-Group A weighs about the same and each glassine bag in Sub-Group B weigh about the same.

Gatling argues that Bleivik did not select a large enough sample size from the Exhibit 6.01 glassine bags to accurately extrapolate the net weight of the drugs. I found limited case law concerning sample sizes when extrapolating data to determine drug quantity.  *See United States v. Pirre*, 927 F.2d 694, 696 (2d Cir. 1991) (affirming district court's finding that government had proved the total drug weight based on the chemist's extrapolation of the total weight of fifteen bricks based on the weight of two bricks); *United States v. Jackson*, 470 F.3d 299, 305 (6th Cir. 2006) (affirming district court's base offense level calculation premised on an Agent's extrapolation of the total drug weight from a random sample of four of eighteen bags); *United States v. Jeross*, 521 F.3d 562, 576–77 (6th Cir. 2008) (finding

---

[16] The standard deviation was 0.01646879.
[17] The standard deviation was 0.01059044.

that district court did not err in relying on a lab report, which extrapolated the total drug weight of the 100,000 pills from an analysis of 2,499 pills). None of those cases involved samples sizes as small, in percentage terms, as the sample size in this case.  Nonetheless, I still find that Bleivik's analysis is reliable based on the other indicators of reliability.  One indicator of reliability is the small standard deviation for the weights of the glassine bags with their contents for Sub-Group A and Sub-Group B.  For Sub-Group A, when Bleivik weighed the 9 bags selected at random with their contents, the standard deviation was 0.01646879.  Ex. 1 at USAO_007717.  For Sub-Group B, the standard deviation was 0.01059044.  *Id.* at USAO_007718.  The small standard deviation indicates that the weights of the bags were quite similar.  Bleivik also testified that if the standard deviation was too high for either sub-groups, the DEA's computer program would require her to select new samples at random until the standard deviation was within an acceptable range.  Another indicator of reliability is Bleivik's testimony that the bags visually appeared to be similar with the exception of the logos and the two different size bags.  After considering all the evidence introduced at the *Fatico* hearing, I find the Government's proposed quantity calculation for DEA Exhibit 6.01 to be supported by a preponderance of the reliable evidence.

### III.    CONCLUSION

For the reasons above, I find that the Government has proved by a preponderance of the evidence that Exhibit 6.01 has a net weight of 0.42 kilograms of heroin and fentanyl.

IT IS SO ORDERED.

                                                  /s/
                                          Michael P. Shea, U.S.D.J.

Dated:       Hartford, Connecticut
                July 19, 2022